IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERWIN HURLBUT, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : **COMPLAINT FOR VIOLATION OF THE** |
| GW PHARMACEUTICALS PLC, | : **SECURITIES EXCHANGE ACT OF 1934** |
| GEOFFREY GUY, JUSTIN GOVER, | : |
| CABOT BROWN, DAVID GRYSKA, | : |
| CATHERINE MACKEY, JAMES NOBLE, | : |
| ALICIA SECOR, and WILLIAM | : |
| WALDEGRAVE, | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

### NATURE OF ACTION

1. On February 3, 2021, GW Pharmaceuticals plc ("GW Pharmaceuticals" or the "Company") entered into an agreement (the "Agreement") to be acquired by Jazz Pharmaceuticals Public Limited Company ("Parent") and Jazz Pharmaceuticals UK Holdings Limited ("Bidco") (together, "Jazz") (the "Proposed Merger").

2. Under the terms of the Agreement, GW Pharmaceuticals' holders of ordinary shares will receive $16.66 $\tfrac{2}{3}$ in cash and ordinary shares of Parent per shar.

3. On March 15, 2021, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4.     As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.     Plaintiff is and has been continuously throughout all relevant times the owner of GW Pharmaceuticals common stock.

9.     Defendant GW Pharmaceuticals is a public limited company incorporated in England and Wales.  GW Pharmaceuticals' common stock is traded on the NASDAQ under the ticker symbol "GWPH."

10.    Defendant Geoffrey Guy is Founder and Chairman of the Board of Directors of GW Pharmaceuticals (the "Board").

11.    Defendant Justin Gober is Chief Executive Officer and a member of the Board.

12.    Defendant Cabot Brown is a member of the Board.

13. Defendant David Gryska is a member of the Board.

14. Defendant Catherine Mackey is a member of the Board.

15. Defendant James Noble is a member of the Board.

16. Defendant Alicia Secor is a member of the Board.

17. Defendant William Waldegrave is a member of the Board.

18. Defendants identified in ¶¶ 10-17 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

19. GW Pharmaceuticals is a biopharmaceutical company focused on discovering, developing, and commercializing novel therapeutics from its proprietary cannabinoid product platform in a broad range of disease areas.

20. February 3, 2021, GW Pharmaceuticals entered into the Agreement, under which GW Pharmaceuticals' holders of ordinary shares will receive $16.66 \frac{2}{3}$ in cash and ordinary shares of Parent per share.

21. The press release announcing the Proposed Merger provides as follows:

Jazz Pharmaceuticals plc (Nasdaq: JAZZ) and GW Pharmaceuticals plc (Nasdaq: GWPH) today announced the companies have entered into a definitive agreement for Jazz to acquire GW for $220.00 per American Depositary Share (ADS), in the form of $200.00 in cash and $20.00 in Jazz ordinary shares, for a total consideration of $7.2 billion, or $6.7 billion net of GW cash. The transaction, which has been unanimously approved by the Boards of Directors of both companies, is expected to close in the second quarter of 2021.

Upon close of the transaction, the combined company will be a leader in neuroscience with a global commercial and operational footprint well positioned to maximize the value of its diversified portfolio.

GW is a global leader in discovering, developing, manufacturing and commercializing novel, regulatory approved therapeutics from its proprietary cannabinoid product platform to address a broad range of diseases. The company's lead product, Epidiolex® (cannabidiol) oral solution, is approved in patients one-

3

year and older for the treatment of seizures associated with Lennox-Gastaut Syndrome (LGS), Dravet Syndrome and Tuberous Sclerosis Complex (TSC), all of which are rare diseases characterized by severe early-onset epilepsy. Epidiolex was the first plant-derived cannabinoid medicine ever approved by the U.S. Food and Drug Administration (FDA). This product has also been approved, under the tradename Epidyolex®, by the European Medicines Agency (EMA) in patients two years of age and older for the adjunctive treatment of seizures associated with LGS and Dravet syndrome in conjunction with clobazam and is under EMA review for the treatment of seizures associated with TSC. In addition to the approved indications for Epidiolex, there are considerable opportunities to pursue other indications within the epilepsy field, including other treatment-resistant epilepsies where significant unmet needs of patients exist.

Beyond *Epidiolex*, GW has a scientific platform and deep innovative pipeline of cannabinoid product candidates, as well as highly specialized manufacturing expertise, developed over two decades of pioneering and building leadership in cannabinoid science. This pipeline includes nabiximols, for which the company is in Phase 3 trials to seek FDA approval for treatment of spasticity associated with multiple sclerosis and spinal cord injury, as well as earlier-stage cannabinoid product candidates for autism and schizophrenia. []

**Transaction Terms**

Under the terms of the agreement, holders of GW ADSs, which each represent 12 GW ordinary shares, will be entitled to receive $220.00 for each GW ADS, of which $200.00 will be paid in cash and $20.00 in Jazz ordinary shares. This represents a premium of approximately 50 percent over GW's closing stock price on February 2, 2021, of $146.25 and 60 percent over GW's 30-day volume weighted average price of $137.17.

The number of Jazz ordinary shares to be issued to the holders of GW ADSs will be based on the volume-weighted average price of Jazz's ordinary shares over a 15 trading day period preceding the closing date of the transaction, subject to limitations on the maximum and minimum number of Jazz ordinary shares issuable per GW ADS based on a price range of $139.72 to $170.76 per Jazz ordinary share. Holders of GW ordinary shares that are not in ADS form will be entitled to receive the foregoing consideration divided by 12 per ordinary share.

The cash portion of the transaction consideration is expected to be funded through a combination of cash on hand and debt financing. Jazz has obtained fully committed debt financing from BofA Securities and J.P. Morgan Securities LLC. The financing includes a meaningful portion of pre-payable debt, in line with Jazz's commitment to rapid deleveraging.

**Closing Conditions**

The transaction has been unanimously approved by the Boards of Directors of both companies, and is subject to the approval of GW shareholders, sanction by the High Court of Justice of England and Wales and other customary closing conditions, including regulatory approvals. Subject to the satisfaction or waiver of the closing conditions, the transaction is expected to close in the second quarter of 2021. []

**Advisors**

Evercore and Guggenheim are serving as lead financial advisors to Jazz Pharmaceuticals, and Evercore is acting as debt advisor. Jazz Pharmaceuticals also received financial advice from BofA Securities and J.P. Morgan Securities LLC. Wachtell, Lipton, Rosen & Katz, Macfarlanes LLP and Arthur Cox LLP are serving as legal advisors.

Goldman Sachs & Co. LLC and Centerview Partners LLC are serving as financial advisors to GW Pharmaceuticals plc and Cravath, Swaine & Moore LLP and Slaughter and May are serving as legal advisors.

22. On March 15, 2021, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

Financial Analyses

23. The Proxy fails to disclose material information regarding the financial analyses performed by Centerview Partners LLC ("Centerview") and Goldman Sachs & Co. LLC ("Goldman"), GW Pharmaceuticals' financial advisors. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion and the key inputs and range of ultimate values generated by those analyses must be fairly disclosed.

24. The Proxy fails to disclose the following regarding Centerview's Selected Transactions Analysis: (i) the closing dates of the transactions; and (ii) the total values of the transactions.

25. The Proxy fails to disclose the following regarding Centerview's Discounted Cash Flow Analysis: (i) the line items used to calculate unlevered free cash flow; (ii) the inputs and assumptions underlying the discount rates; (iii) the terminal values; (iv) the basis for assuming that unlevered free cash flows would decline in perpetuity after December 31, 2035 at a range of rates of free cash flow decline of 10% to 40% year over year; and (v) the number of fully diluted outstanding ordinary shares.

26. The Proxy fails to disclose the following regarding Centerview's Sensitivity Analysis: the assumptions with respect to Epidiolex and Nabiximols.

27. The Proxy fails to disclose the following regarding Centerview's Analyst Price Target Analysis: (i) the price targets; and (ii) the sources of the price targets.

28. The Proxy fails to disclose the following regarding Centerview's Premia Paid Analysis: the premiums paid in the transactions.

29. The Proxy fails to disclose the following regarding Goldman's Illustrative Discounted Cash Flow Analysis: (i) the line items used to calculate unlevered free cash flow; (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates; (iii) the terminal values; and (iv) the number of fully diluted outstanding ordinary shares.

30. The Proxy fails to disclose the following regarding Goldman's Sum-of-the-Parts Discounted Cash Flow Analysis: (i) the unlevered free cash flows; (ii) the line items used to calculate unlevered free cash flows; (iii) the inputs and assumptions underlying the discount rates; (iv) the terminal values; and (v) the number of fully diluted outstanding ordinary shares.

Financial Projections

31. The Proxy fails to disclose material information regarding GW Pharmaceuticals' and Jazz's financial projections. The disclosure of projected financial information is material

because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by a company's financial advisor in support of its fairness opinion.

32. The Proxy fails to disclose the following regarding GW Pharmaceuticals' financial projections: (i) the line items used to calculate EBIT; (ii) the line items used to calculate unlevered free cash flow; and (iii) the changes to the original financial projections.

33. The Proxy also fails to disclose Jazz's financial projections.

<u>Background of the Proposed Merger</u>

34. The Proxy fails to disclose material information regarding the background of the Proposed Merger.

35. The Proxy fails to disclose what prompted defendants to engage Radford, as well as the terms of its engagement.

36. If disclosed, the omitted information would significantly alter the total mix of information available to GW Pharmaceuticals' stockholders.

**COUNT I**

**Claim Against the Individual Defendants and GW Pharmaceuticals for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

37. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

39. GW Pharmaceuticals is liable as the issuer of these statements.

40. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

41. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

43. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

44. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

45. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

46. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

47. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of GW Pharmaceuticals within the meaning of Section 20(a) of the Exchange Act as alleged herein.

49. Due to their positions as officers and/or directors of GW Pharmaceuticals and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did

influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

52. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

53. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

54. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

55. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

56. Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: March 30, 2021

**GRABAR LAW OFFICE**

By: *[signature]*
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*